

2003 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

12-17-2003

# Diakite v. Atty Gen USA

Precedential or Non-Precedential: Non-Precedential

Docket No. 03-1027

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2003

Recommended Citation

"Diakite v. Atty Gen USA" (2003). *2003 Decisions.* Paper 54.
http://digitalcommons.law.villanova.edu/thirdcircuit_2003/54

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2003 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———————

No. 03-1027

———————

YORO DIAKITE,

Petitioner

v.

JOHN ASHCROFT, Attorney General of the United States,

Respondent

———————

ON PETITION FOR REVIEW OF AN ORDER OF THE BOARD OF IMMIGRATION
APPEALS
(No. A70 902 819)

———————

Submitted Under Third Circuit LAR 34.1(a)
DECEMBER 4, 2003

Before: SLOVITER, ALITO, Circuit Judges and OBERDORFER, District Judge[*]

(Opinion Filed: December 17, 2003)

———————

———————

[*] Hon. Louis F. Oberdorfer, United States District Court for the District of
Columbia, sitting by designation.

OPINION OF THE COURT

PER CURIAM:

I.

As we write for the parties only, we do not set out the background of this case.

II.

A.

Diakite's principal argument is that the IJ erred by finding that he had engaged in a fraudulent marriage. Diakite argues that this finding was in direct opposition to the vast majority of the record. In fact, it is clear that the IJ's finding was not only supported by substantial evidence but is practically the only logical conclusion possible based on the record evidence. The record is replete with evidence upon which the IJ could have based his decision. We will only point to some of it here.

First, Diakite and his alleged wife, Denice Satchell, had differing stories as to how they met. Though both testified that they met at the University of Pennsylvania Hospital, their testimony differed as to the circumstances of the meeting. Diakite testified that he met Ms. Satchell when both were visiting someone at the hospital. R. at 76. Diakite stated that they met downstairs in the hospital and, though he gave Ms. Satchell his phone number, she refused to give him her phone number. Id. at 76-77. However, Ms. Satchell testified that she was not visiting anyone at the hospital but was working at the hospital, that she met Diakite in the hospital room of his sister (the person he was visiting) and that she in fact gave him her phone number at that time. Id. at 115-117.

Second, Ms. Satchell testified that Diakite's work route took him all the way to California and that he was gone all the time for his job. Id. at 124. Diakite testified, however, that his job only took him as far north as Long Island and as far south as Delaware and that he occasionally spent, at most, two days on the road. Id. at 87-88.

Third, Diakite testified that Satchell had converted to Islam and was at the time of the hearing a Muslim. Id. at 81-82. She on the other hand testified that she had tried Islam for a period of months the year before but had returned shortly thereafter to her Baptist Christian faith. Id. at 122-23.

Fourth, the testimony of the INS agents who examined the apartment that Diakite and Satchell allegedly shared was greatly supportive of the conclusion that Diakite and Satchell were not married. Finally, Satchell could not recall her exact address. See id. at 119.

There were many more inconsistencies and evidence on the record but those cited suffice to show that the IJ had substantial evidence upon which to base his finding. Because we believe that the IJ's finding of a fraudulent marriage is upheld by the record evidence we need not reach Diakite's argument concerning the adjustment of his status because of a new bona fide marriage. Finally, our review of the record shows no evidence that the IJ conducted himself in a biased manner. Given all this, Diakite's petition for review of the BIA's decision is denied.

III.

We have reviewed Diakite's arguments and see no grounds for granting his petition.  Therefore, his petition will be denied.